IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **PATRICK KREPPER,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　　-v-<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, and CAPITAL ONE BANK (USA), N.A.,**<br><br>　　　　　　**Defendants.** | Civil Case Number:<br><br><u>CIVIL ACTION</u><br><br>COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

　　　　1.　　Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2]

　　　　2.　　Plaintiff, Patrick Krepper, has been the unfortunate victim of identity

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).

[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission— Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).

theft. Specifically, upon information and belief, at least one identified individual implementing an online scam used Plaintiff's information to open an account and make unauthorized transactions with Capital One, without Plaintiff's authorization. This account has severely harmed Plaintiff's credit with each of the credit reporting agencies reporting the account inaccurately.

3. Rather than working with Plaintiff to rectify this unfortunate situation, each of the Defendants has refused to remove this fraudulent account from his credit report, despite Plaintiff specifically disputing the fraudulent items. Instead, the Defendants have continued to willfully and negligently harm Plaintiff's credit report by continuing to associate this fraudulent account with Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit.

4. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, and Capital One Bank (USA) have negligently, recklessly and knowingly disseminated false information regarding Plaintiff's credit, namely by continuing to associate Plaintiff with this fraudulent information, particularly after Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5. Plaintiff further alleges that the consumer reporting agencies TransUnion, Equifax, and Experian failed to investigate credit report inaccuracies in

response to Plaintiff's disputes, and that TransUnion failed to provide Plaintiff all information in his consumer file in response to his specific requests.

6. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, attorneys' fees, and costs.

## JURISDICTION

7. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  All defendants regularly conduct business within the state of Florida and violated Plaintiff's rights under the FCRA in the state of Florida as alleged more fully below.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendants conduct business in this District, and communications giving rise to this action occurred in this District.

## PARTIES

9. Plaintiff, Patrick Krepper ("Plaintiff"), is a resident of Pinellas Park, Florida and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(f).

10. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of

furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11. Equifax's principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

12. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13. Experian is a corporation with its headquarters in Costa Mesa, California.

14. Defendant TransUnion, LLC ("TransUnion") is also one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to

third parties.

15.    TransUnion is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

16.    Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank with its headquarters located at 1680 Capital One Financial Corp Drive, McLean, Virginia 22102.

## FACTUAL ALLEGATIONS

17.    Beginning in or around October of 2024, Plaintiff was victimized by scammers perpetrating the "Mavis Wanczyk Mega Millions Scam," a fraudulent scheme targeted at senior victims.[3] In or around January of 2025, Plaintiff discovered that a Capital One account, account number ending in *3314 was appearing on his consumer credit reports from Equifax, Experian and Transunion (collectively the "CRAs"). Upon information, this account was both opened by the scam perpetrators and used to make purchases without Plaintiff's knowledge or authorization to do so.

18.    Accordingly, Plaintiff then took appropriate action, including filing a police report with Pinellas County Sheriff's Office and completing a sworn FTC Identity Theft Affidavit in which he listed this account as it was appearing on his credit reports despite the fact that it was fraudulently opened and used to make purchases without his consent.

---

[3] *See* AARP, *No, Mavis Wanczyk Is NOT Trying to Give You Money: Criminals pretend to be big-time lottery winners who'd like to share their wealth*, (June 4, 2025) available at https://www.aarp.org/money/scams-fraud/powerball-lottery-winner-scam/#:~:text=The%20typical%20scam%20begins%20with,and%20your%20money%20is%20gone.

19. Plaintiff then disputed this inaccurate reporting with the CRAs on or about October 21, 2025. In those disputes, Plaintiff clearly advised the CRAs that he was the victim of identity theft, and that this information should be removed and blocked.

20. With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit, Pinellas County Sheriff's Office Incident Report and the required identity verification documentation.

21. Following receipt of Plaintiff's dispute, Equifax refused to investigate, correct or remove the fraudulent information from Plaintiff's credit file. Instead, Equifax responded indicating it was "unable to locate a credit file for [Plaintiff]," despite the fact that he had provided all required documentation to verify his identity with his dispute.

22. Similarly, Transunion refused to investigate, correct or remove the fraudulent information from Plaintiff's credit file. Instead, Transunion insisted that Plaintiff was required to send additional documentation of his personally identifiable information, despite the fact that Plaintiff had provided all required documentation to verify his identity with his dispute.

23. Experian also refused to investigate, correct or remove the fraudulent information from Plaintiff's credit file.

24. On or about December 2, 2025, Plaintiff again disputed this inaccurate reporting with the CRAs. In those disputes, Plaintiff clearly advised the CRAs that he

was the victim of identity theft, and that this information should be removed and blocked. Additionally, Plaintiff expressly requested "a complete copy of all information in [his] consumer file."

25. With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit, Pinellas County Sheriff's Office Incident Report, and the required identity verification documentation.

26. Following receipt of Plaintiff's second dispute, Experian refused to investigate, correct or remove the fraudulent Capital One information from Plaintiff's credit file. Instead, that information is still being reported to this day.

27. Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

28. Following receipt of Plaintiff's second dispute, Equifax expressly refused to block the fraudulent Capital One information from Plaintiff's credit file. However, Equifax ultimately removed and/or deleted the fraudulent information from Plaintiff's credit report.

29. Transunion responded to Plaintiff's second dispute indicating that it "didn't appear to come from [him]" and as such, "[Transunion] didn't process the request." Again, Transunion refused to investigate, correct or remove the fraudulent Capital One information from Plaintiff's credit file. Instead, that information is still being reported to this day.

30. Upon information and belief, Transunion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

31. Upon information and belief, Defendant Capital ONe received notice of all of Plaintiff's disputes from the CRAs.

32. The CRAs and Capital One were each notified of the respective disputes, but refused to investigate and/or remove inaccurate reporting.

33. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under sections 1681s, 1681i, 1681g and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

34. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

35. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

36. As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and his ability to secure credit. For example, Plaintiff has been denied credit due to these derogatory inaccuracies, and has been

offered credit on less favorable terms.

37. Defendants' violations of the FCRA further caused Plaintiff great distress, anger, annoyance and frustration in his daily life, subjected Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free, and caused the dissemination of defamatory information regarding Plaintiff.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EQUIFAX

38. Paragraphs 1-37 are realleged and incorporated herein.

39. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(f).

40. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

41. On or about October 21, 2025, Plaintiff initiated a dispute with Equifax requesting that it correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Capital One information. Plaintiff provided information and documentation showing that he was

the victim of identity theft and had not opened or used this account.

42. Equifax received Plaintiff's dispute letters, as evidenced by the certified mailing receipt in Plaintiff's possession.

43. However, Defendant Equifax never adequately investigated Plaintiff's disputes, as required by the FCRA.

44. Instead, Equifax, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report the inaccurate Capital One information, something that any basic investigation would have prevented.

45. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

### COUNT II
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST EQUIFAX

46. Paragraphs 1-37 are realleged and incorporated herein.

47. On or about October 21 and December 2, 2025, Plaintiff initiated a dispute with Equifax requesting that they correct, remove and block the inaccurate Capital One information as this account was fraudulently opened and used to make purchases by an individual other than Plaintiff without Plaintiff's consent.

48. In support of this dispute, Plaintiff included copies of the sworn FTC Identity Theft Affidavit and Pinellas County Sheriff's Office Incident Report.

49. Equifax refused to acknowledge that it had heightened obligations under

such circumstances than those triggered by a standard dispute.

50. As such, instead of following the law and blocking the fraudulent information on Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

51. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EXPERIAN

52. Paragraphs 1-37 are realleged and incorporated herein.

53. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined in 15 U.S.C. § 1681a(f).

54. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

55. On or about October 21 and December 2, 2025, Plaintiff initiated a dispute with Experian requesting that they correct and remove the specific fraudulent

items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Capital One information. Plaintiff provided information and documentation showing that he was the victim of identity theft and that this account was fraudulently opened and used to make purchases by an individual other than Plaintiff without Plaintiff's consent.

56. Experian received Plaintiff's dispute letters, as evidenced by the certified mailing receipt in Plaintiff's possession.

57. However, Experian never adequately investigated Plaintiff's disputes, as required by the FCRA.

58. Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report the inaccurate Capital One information, something that any basic investigation would have prevented.

59. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT IV
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST EXPERIAN

60. Paragraphs 1-37 are realleged and incorporated herein.

61. On or about October 21 and December 2, 2025, Plaintiff initiated a dispute with Experian requesting that they correct and remove the inaccurate Capital One as this account was fraudulently opened and used to make purchases by an

individual other than Plaintiff without Plaintiff's consent.

62. In support of this dispute, Plaintiff included copies of the sworn FTC Identity Theft Affidavit and Pinellas County Sheriff's Office Incident Report.

63. Experian refused to acknowledge that it had heightened obligations under such circumstances than those triggered by a standard dispute.

64. As such, instead of following the law and blocking the fraudulent information on Plaintiff's credit report within four days of receiving the dispute, Experian continued to report this fraudulent information.

65. As a direct and proximate result of Experian's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT V
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST TRANS UNION

66. Paragraphs 1-37 are realleged and incorporated herein.

67. At all times pertinent hereto, TransUnion was a "consumer reporting agency" ("CRA") as that term is defined in 15 U.S.C. § 1681a(f).

68. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in

> accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

69. On or about October 21 and December 2, 2025, Plaintiff initiated a dispute with TransUnion requesting that it correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Capital One information. Plaintiff provided information and documentation showing that he was the victim of identity theft and that this account was fraudulently opened and used to make purchases by an individual other than Plaintiff without Plaintiff's consent.

70. TransUnion received Plaintiff's dispute letters, as evidenced by the certified mailing receipt in Plaintiff's possession.

71. However, TransUnion never adequately investigated Plaintiff's disputes, as required by the FCRA.

72. Instead, TransUnion, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report the inaccurate Capital One information, something that any basic investigation would have prevented.

73. As a direct and proximate result of TransUnion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681g
## AGAINST TRANS UNION

74. Paragraphs 1-37 are realleged and incorporated herein.

75. The FCRA provides that every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer *inter alia* (1) the contents of the consumer's credit file, (2) the sources of that information, (3) the identities of each person who obtained the consumer's file, and (4) a record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer.

76. On or about December 2, 2025, Plaintiff expressly requested his credit file from Transunion in writing in an attempt to see why his credit information was not being accurately relayed by Equifax.

77. Despite receiving this request, and whatever additional information was required of the Plaintiff, Transunion has failed to disclose to the Plaintiff the contents of his consumer file.

78. As a direct and proximate result of Transunion's willful and/or negligent refusal to comply with Section 1681g of the FCRA, Plaintiff has been harmed, as explained above

## COUNT VII
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST TRANS UNION

79. Paragraphs 1-37 are realleged and incorporated herein.

80. On or about October 21 and December 2, 2025, Plaintiff initiated a dispute with Transunion requesting that they correct and remove the inaccurate Capital One information as this account was fraudulently opened and used to make purchases by an individual other than Plaintiff without Plaintiff's consent.

81. In support of this dispute, Plaintiff included copies of the sworn FTC Identity Theft Affidavit and Pinellas County Sheriff's Office Incident Report.

82. Transunion refused to acknowledge that it had heightened obligations under such circumstances than those triggered by a standard dispute.

83. As such, instead of following the law and blocking the fraudulent information on Plaintiff's credit report within four days of receiving the dispute, Transunion continued to report this fraudulent information.

84. As a direct and proximate result of Transunion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VIII
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 U.S.C. § 1681s-2(b)
### AGAINST CAPITAL ONE

85. Paragraphs 1-37 are realleged and incorporated herein.

86. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

87. On or about October 21 and December 2, 2025, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by Capital One.

88. Upon information and belief, Capital One received notice of these disputes from the credit bureaus.

89. Capital One was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

90. Even after Plaintiff properly disputed this account with the credit reporting agencies, Capital One refused to conduct a reasonable investigation and continued inaccurately reporting the inaccurate information on Plaintiff's credit reports, specifically Plaintiff's report provided by Equifax.

91. Capital One's conduct violated section 1681s-2(b) of the FCRA.

92. As a result of Capital One's conduct, Plaintiff was harmed, as discussed above.

## DEMAND FOR TRIAL BY JURY

93. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A. Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 23, 2026

By: /s/ Joseph Kanee, Esq.
Joseph Kanee, Esq.
MARCUS & ZELMAN, LLC
1508 SW 23 Street
Fort Lauderdale, FL 33315
(848) 346-4358 telephone
(732) 298-6256 facsimile
joseph@marcuszelman.com
*Attorney for Plaintiff*